## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| REBECCA HOLLAND NEW, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:19cv807 |
| | ) | |
| THERMO FISHER SCIENTIFIC, INC., | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

This matter comes before the Court on four motions to seal (Docket Entries 36 (the "First Sealing Motion"), 49 (the "Second Sealing Motion"), 53 (the "Third Sealing Motion"), 57 (the "Fourth Sealing Motion") (collectively, the "Sealing Motions"). For the reasons that follow, the Court will deny the Sealing Motions.

### BACKGROUND

The parties have sought to redact and/or seal four briefs and numerous exhibits filed in connection with three motions to compel (Docket Entries 34, 41 (collectively, the "Old Discovery Motions"), 44 (the "Expert Discovery Motion")) filed by Rebecca Holland New (the "Plaintiff").[1] Via the Old Discovery Motions, Plaintiff attempted to obtain, inter alia, documents connected to internal investigations that Thermo Fisher Scientific, Inc. (the "Defendant") conducted after complaints by Plaintiff and another then-employee, Jillian Otto ("Otto"). (See Docket Entry 34 at 1–2

---

[1] Plaintiff filed two versions of the first motion to compel, one redacted on the public docket and another sealed, unredacted version. (See Docket Entries 34 (redacted), 37 (sealed).)

(seeking production of "documents related to [Defendant]'s investigation into [Plaintiff]'s claims of discrimination, harassment, and retaliation against Lukas Utiger [('Utiger')], and material changes in [Plaintiff's] job duties" (the "New Report")); Docket Entry 41 at 1–2 (requesting compelled disclosure of "Otto Investigation" and related documents); see also Docket Entries 35 (redacted supporting memorandum), 38 (sealed supporting memorandum).)[2]

In connection with the Old Discovery Motions, Plaintiff has moved to file a redacted memorandum (Docket Entry 35 (the "Old Discovery Brief")), a redacted reply (Docket Entry 52 (the "Old Discovery Reply")), and several sealed exhibits accompanying those briefs. (See Docket Entries 36, 53.) More specifically, the First Sealing Motion concerned the New Report (Docket Entry 35-1), Defendant's position statement to the Equal Employment Opportunity Commission ("EEOC") (Docket Entry 35-2) (the "Position Statement"), several emails sent by Defendant's employees (Docket Entries 35-4, 35-6, 35-8, 35-9, 35-10), and excerpts from Otto's deposition (Docket Entry 35-5). (See Docket Entry 36, ¶ 4.) Exhibits within the scope of the Third Sealing Motion include additional excerpts from Otto's deposition (Docket Entry 52-1), excerpts from the deposition of Michael Jewett ("Jewett") (Docket Entry 52-2), and an email between counsel in this action (Docket Entry 52-4). (See

---

[2] The parties agreed that Plaintiff could file a single memorandum in support of the Old Discovery Motions, that Defendant could respond via consolidated brief, and that Plaintiff could reply in similar fashion. (See Docket Entry 46 at 1.)

-2-

Docket Entry 53, ¶ 4.) According to Plaintiff, only Defendant deemed those documents confidential. (See Docket Entry 36, ¶ 4; Docket Entry 53, ¶ 4.) Consistent with this Court's Local Rules, Defendant submitted briefs in support of the First Sealing Motion and Third Sealing Motion (see Docket Entries 42 (the "First Sealing Brief"), 65). See M.D.N.C. LR 5.4(c) (mandating that party claiming confidentiality file brief in support of motion to seal by another party).

Defendant likewise has moved to redact parts of its consolidated opposition (Docket Entry 48 (the "Old Discovery Response")) to the Old Discovery Motions and to seal or redact numerous exhibits. (See Docket Entry 49.) In particular, Defendant has submitted under seal a declaration from its in-house counsel Shalu Tandon (Docket Entry 48-3 (the "Tandon Declaration")) and an email between counsel in this action (Docket Entry 48-4), as well as redacted versions of the depositions of Amanda Bosse ("Bosse") (Docket Entry 48-5), Marc Casper ("Casper") (Docket Entry 48-6), Michael Glass ("Glass") (Docket Entry 48-7), Jewett (Docket Entries 48-8, 48-9), Michel Lagarde ("Lagarde") (Docket Entry 48-10), Franco Negron ("Negron") (Docket Entry 48-11), Plaintiff (Docket Entry 48-12), Otto (Docket Entry 48-13), Toni Sweeney ("Sweeney") (Docket Entry 48-14), and Utiger (Docket Entry 48-15). (See Docket Entry 49, ¶¶ 3-4.) Defendant and Plaintiff each designated as confidential some of the foregoing documents. (See id.) Defendant (but not Plaintiff) filed a brief in connection with the Second Sealing Motion. (See Docket Entry 50; Docket

-3-

Entries dated July 7, 2021, to present (reflecting no brief filed by Plaintiff).)

As concerns the Expert Discovery Motion, Plaintiff sought to "compel[] Defendant['s] . . . expert witness, Dr. Mickey Ferri [('Ferri')], to produce certain expert reports that he prepared in prior cases in which he was retained as an expert on wage computation" (Docket Entry 44 at 1). The Expert Discovery Motion and supporting memorandum appear without redaction on the public docket. (See id.; see also Docket Entry 45.) Defendant has moved to redact portions of its brief (Docket Entry 56 (the "Expert Discovery Response")) opposing the Expert Discovery Motion and to file several exhibits under seal. (See Docket Entry 57.) In that regard, Defendant submitted a sealed declaration from Ferri (Docket Entry 61 at 1–4 ("Ferri Declaration")),[3] which included as exhibits his preliminary report in this action (id. at 5–103 ("Ferri Report")) and his curriculum vitae (id. at 104-15 ("Ferri CV")), as well as sealed excerpts from Ferri's deposition (Docket Entry 56-4) and the depositions of Wendy McLawhorn ("McLawhorn") (Docket Entry 56-2) and Plaintiff (Docket Entry 56-3). As with the Second Sealing Motion, Defendant and Plaintiff each asserted an interest in protecting some of those materials from disclosure. (See Docket Entry 57, ¶¶ 3-4.) Only Defendant tendered a brief in support of the Fourth Sealing Motion. (See Docket Entry 58 (the "Fourth

_____

[3] Defendant originally failed to upload the Ferri Declaration as intended (see Docket Entry 59-1) but later provided the corrected document (see Docket Entry 61).

-4-

Sealing Brief"); <u>see also</u> Docket Entries dated July 13, 2021, to present (reflecting no brief filed by Plaintiff).)[4]

The Court (per the undersigned United States Magistrate Judge) held a hearing (the "Hearing") on the Old Discovery Motions (<u>see</u> Minute Entry dated July 30, 2021), after which the Court granted partial relief, ordering Defendant to provide certain documents to Plaintiff (<u>see</u> Text Order dated Sept. 3, 2021.) Shortly thereafter, the Court granted in part and denied in part the Expert Discovery Motion, directing Defendant to produce "any report, analysis, or declaration prepared by [] Ferri, and the transcript of any testimony by [] Ferri regarding any such report, analysis, or declaration, in [one prior] case [that Plaintiff had identified]" (Text Order dated Sept. 13, 2021).

## DISCUSSION

### I. Relevant Standards

Under Federal Rule of Civil Procedure 26 ("Rule 26"), "[u]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). Rule 26 provides for "[l]iberal

---

[4]    Plaintiff also sought to redact portions of her reply (Docket Entry 62) in support of the Expert Discovery Motion and to file accompanying exhibits under seal (<u>see</u> Docket Entry 63), which the Court (per the undersigned United States Magistrate Judge) denied after noting Defendant's failure to file a supporting brief as required by Local Rule. (<u>See</u> Text Order dated Sept. 28, 2021 (directing Clerk to unseal Docket Entry 64).)

-5-

discovery . . . for the sole purpose of assisting in the preparation and trial, or the settlement, of litigated disputes." Seattle Times Co. v. Rhinehart, 467 U.S. 20, 34 (1984). The liberal scope of discovery necessitates that the Court "have the authority to issue protective orders conferred by Rule 26(c)." Id. Such an order may "limit[] the scope of disclosure or discovery" or require the sealing of certain materials. Fed. R. Civ. P. 26(c)(1).

"However, the authority granted to a court under Rule 26(c) to require special handling of information gathered during discovery is constrained by the public's right of access to judicial records." Kinetic Concepts, Inc. v. Convatec Inc., No. 1:08CV918, 2010 WL 1418312, at *7 (M.D.N.C. Apr. 2, 2010) (unpublished).[5] "[T]wo independent sources" provide the public with such a right: "the common law and the First Amendment." Virginia Dep't of State Police v. Washington Post, 386 F.3d 567, 575 (4th Cir. 2004). "[Whereas] the common[-]law presumption in favor of access attaches to all 'judicial records and documents,' the First Amendment guarantee of access has been extended only to particular judicial records and documents." Stone v. University of Md. Med. Sys. Corp., 855 F.2d 178, 180 (4th Cir. 1988) (quoting Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597 (1978)); see also United States

---

[5] "This constraint arises because '[t]he operations of the courts and the judicial conduct of judges are matters of utmost public concern.'" Kinetic Concepts, 2010 WL 1418312, at *7 (quoting Landmark Commc'ns, Inc. v. Virginia, 435 U.S. 829, 839 (1978)).

v. Moussaoui, 65 F. App'x 881, 889 (4th Cir. 2003) ("Some . . . documents fall within the common[-]law presumption of access, while others are subject to the greater right of access provided by the First Amendment.").

One or both of those rights of access may apply to discovery materials (even when subject to a Rule 26(c) protective order) if such materials "constitute 'judicial documents and records.'" Kinetic Concepts, 2010 WL 1418312, at *7 (quoting Stone, 855 F.2d at 180). Importantly, that designation requires more than "the mere filing of a document with a court." Spear v. Ernst & Young (In re Policy Mgmt. Sys. Corp.), Nos. 94-2254, 2341, 67 F.3d 296 (table), 1995 WL 541623, at *4 (4th Cir. Sept. 13, 1995) (unpublished). To qualify as judicial records, documents must "play a role in the adjudicative process, or adjudicate substantive rights." United States v. Appelbaum (In re United States), 707 F.3d 283, 290 (4th Cir. 2013); see also Level 3 Commc'ns, LLC v. Limelight Networks, Inc., 611 F. Supp. 2d 572, 576 (E.D. Va. 2009) (discussing public right of access to "materials that have been submitted to courts in connection with civil pleadings or motions (dispositive or otherwise) or entered by courts into evidence in the course of hearings or trial, whatever the materials' origins or pre-trial confidentiality status might previously have been"). When no public right of access applies, Rule 26(c)'s "good cause" standard governs the request to seal or redact discovery material. See Hatch v. Demayo, No. 1:16cv925, 2020 WL 6161533, at *6 (M.D.N.C. Oct. 21, 2020) (unpublished). Under that standard,

-7-

"[t]he [C]ourt may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c)(1).

When a party proposes to seal judicial records to which a public right of access applies, the Court begins by "determin[ing] the source of the right of access with respect to each document," as "only then can it accurately weigh the competing interests at stake." Virginia Dep't of State Police, 386 F.3d at 576 (internal quotation marks omitted).  "[The common-law] presumption of access . . . can be rebutted if countervailing interests heavily outweigh the public interests in access." Rushford v. New Yorker Magazine, Inc., 846 F.2d 249, 253 (4th Cir. 1988).  The relevant factors include "whether the records are sought for improper purposes, such as promoting public scandals or unfairly gaining a business advantage; whether release would enhance the public's understanding of an important historical event; and whether the public has already had access to the information contained in the records."  In re Knight Publ'g Co., 743 F.2d 231, 235 (4th Cir. 1984).  Under the more stringent First Amendment standard, the Court may seal material "only on the basis of a compelling governmental interest, and only if the denial [of access] is narrowly tailored to serve that interest." Stone, 855 F.2d at 180.

Under either standard, the Court evaluates the competing interests according to the following procedure.  First, "it must give the public notice of the request to seal and a reasonable opportunity to challenge the request." Virginia Dep't of State

-8-

Police, 386 F.3d at 576.  Next, "it must consider less drastic alternatives to sealing."  Id.  Finally, "if it decides to seal[,] it must state the reasons (and specific supporting findings) for its decision and the reasons for rejecting alternatives to sealing."  Id.  Those steps "ensure that the decision to seal materials will not be made lightly and that it will be subject to meaningful appellate review."  Id.

The legal framework described above applies to requests by a party to file a redacted document, i.e., a document sealed in part. See Moussaoui, 65 F. App'x at 889 ("As to those documents subject to a right of access, we must then conduct the appropriate balancing to determine whether the remainder of the document should remain sealed, in whole or in part."); see also Bethesda Softworks, LLC v. Interplay Ent. Corp., Civ. Action No. 09-2357, 2010 WL 3781660, at *9-10 (D. Md. Sept. 23, 2010) (unpublished) (treating motion to redact transcript as motion to seal).  "The interest of the public in the flow of information is protected by [the Court's] exercis[e of] independent judgment concerning redactions." Moussaoui, 65 F. App'x at 888 (citing United States v. Pelton, 696 F. Supp. 156, 159 n.2 (D. Md. 1986) (noting that court would "carefully compare the redacted version [of a transcript] to the unredacted version for accuracy and to determine whether all the proposed deletions are necessary")).

By Local Rule, "[s]ealed documents should not be filed unless necessary for determination of the matter before the Court." M.D.N.C. LR 5.4(a)(3).  This Court's Local Rules seek "to minimize

-9-

the filing of sealed documents, to protect the public right of access, to ensure the docket is clear so that documents can be found easily, and to allow for review of motions to seal in a way appropriate for the case and that reduces cost, time, and confusion." M.D.N.C. LR 5.4(a)(5). Consistent with those principles, litigants must refrain from filing immaterial documents and then seeking to maintain such documents under seal. See M.D.N.C. LR 5.4(a)(3) (noting that litigants should file only non-confidential portions of documents, when possible). In addition, failure by a party claiming confidentiality to file materials in support of a request to seal "will result in denial of the motion to seal and unsealing of the materials without further notice." M.D.N.C. LR 5.4(c)(3). Finally,

> [w]hen the party filing a motion to seal is also the party claiming confidentiality, that party may elect to withdraw the documents for which sealing is sought, if the motion to seal is denied and no other party has relied upon the documents, in which case the documents will not be considered by the Court. Any such election must be included in the initial motion to seal, and if the motion to seal does not include such an election, the documents will be unsealed if the motion to seal is denied.

M.D.N.C. LR 5.4(c)(7).

## II. Analysis

As an initial matter, Plaintiff failed to file a brief in support of the Second Sealing Motion and Fourth Sealing Motion (see Docket Entries dated July 7, 2021, to present), despite asserting an interest in the confidentiality of certain materials that Defendant sought to seal on each occasion (see Docket Entry 49,

-10-

¶ 4; Docket Entry 57, ¶ 4).  That failure warrants partial denial of the Second Sealing Motion and the Fourth Sealing Motion, to the extent Defendant has requested to seal documents designated by Plaintiff as confidential.  (See Docket Entry 49, ¶ 4 (referencing excerpts from depositions of Casper (Docket Entry 48-6) and Plaintiff (Docket Entry 48-12)); Docket Entry 57, ¶ 4 (referencing additional excerpts from Plaintiff's deposition (Docket Entry 56-3)).)  Accordingly, the Clerk shall "unseal[] . . . th[os]e materials without further notice," M.D.N.C. LR 5.4(c)(3).

Turning to the remainder of the Second Sealing Motion and Fourth Sealing Motion, as well as the entirety of the First Sealing Motion and Third Sealing Motion, Defendant has asserted that the common-law right of access applies to the documents within the scope of those motions.  (See Docket Entry 42 at 7–8; Docket Entry 50 at 7–8; Docket Entry 58 at 7; Docket Entry 65 at 6.)  In each case, Defendant has contended that the pertinent materials "do not appear elsewhere on the [public] docket . . . and do not contain information disseminated by [Defendant] to the general public." (See, e.g., Docket Entry 42 at 7–8.)  According to Defendant, the extent to which the materials at issue relate to two sensitive topics (personnel information of Defendant's former or current employees (id. at 9–10), and "[Defendant's] confidential business information" (id. at 11)) provides sufficient justification for the requests to seal and/or redact.  (See, e.g., id. at 8–13.)

Regarding the standard applicable to the Sealing Motions, this Court previously has noted the lack of binding authority as to

-11-

whether any public right of access attaches to documents related to discovery motions (such as motions to compel), "conclud[ing] that no public access right attaches to [such documents]." Kinetic Concepts, 2010 WL 1418312, at *9-10. However, "[t]hat conclusion does not end the inquiry," id. at *10, because even if Defendant does not bear the burden of satisfying the common-law standard, "[it] still must show 'good cause' under Rule 26(c) to secure continued special handling procedures for the[] materials [at issue]." Id. Moreover, "because the [United States Court of Appeals for the] Fourth Circuit has not definitively resolved the access right question in the discovery motion context, the Court will conduct the 'competing interests' balancing test that would govern if the common-law access right did apply, along with the 'good cause' inquiry." Id. at *10 & n.14 ("observ[ing] that both inquiries involve similar considerations").

Turning to procedural requirements, all parties and the public have possessed access to the Sealing Motions for several months. (See Docket Entries 36 (filed June 14, 2021), 49 (filed July 7, 2021), 53 (filed July 9, 2021), 57 (filed July 13, 2021).) No party or member of the public has opposed the Sealing Motions in the intervening time period. (See Docket Entries dated June 14, 2021, to present.) Accordingly, the Court finds all procedural prerequisites satisfied, as any interested persons have received "notice of the request to seal and a reasonable opportunity to challenge the request," Virginia Dep't of State Police, 386 F.3d at

-12-

576. Nevertheless, for the reasons explained below, the Court will deny the Sealing Motions.

## A. First Sealing Motion

As mentioned above, the First Sealing Motion pertains to the New Report, the Position Statement, five internal emails exchanged by Defendant's current or former employees, excerpts from Otto's deposition, and portions of Plaintiff's Old Discovery Brief that mention or discuss the foregoing documents. (See Docket Entry 36, ¶¶ 4-5.) That material amounts to numerous redactions on 19 pages of the 21-page Old Discovery Brief, as well as more than 50 pages of entirely sealed exhibits. (See Docket Entries 35, 35-1, 35-2, 35-4, 35-5, 35-6, 35-8, 35-9, 35-10.) Although Defendant has maintained that such material does not appear elsewhere on the public docket (Docket Entry 42 at 7-8), some publicly filed exhibits accompanying the Old Discovery Brief disclose information that the parties elsewhere have sought to seal or redact. For example, an email from Plaintiff reveals the nature of Otto's workplace complaint (one subject of Otto's sealed deposition (see Docket Entry 38-5 at 3, 5, 8-9)), as well as Plaintiff's request for Jewett's assistance in that matter. (See Docket Entry 35-11 at 1-2.) Similarly, a communication from counsel for Plaintiff indicates that Lynn Goodfellow ("Goodfellow"), while employed by Defendant as an "Employee Relations Advisor" (Docket Entry 35-21), investigated Plaintiff's and Otto's complaints involving Utiger (see Docket Entry 35-19 at 1-2.)

-13-

Moreover, at the (public) Hearing, the parties and the undersigned discussed a substantial portion of the information that the First Sealing Motion has identified as sensitive. (See Minute Entry dated July 30, 2021.)[6]  In particular, the parties disclosed the existence of the New Report and the Otto Investigation, as well as the fact that those documents (respectively) pertained to Plaintiff's workplace complaint about Utiger and Otto's workplace complaint about another employee, to include Utiger's support of the latter. (See id.)  Given the public disclosure that occurred in public exhibits to the First Sealing Motion and at the subsequent public Hearing, Defendant has not shown that its confidentiality interests "heavily outweigh the public interests in access," Rushford, 846 F.2d at 253, or that good cause supports the First Sealing Motion.  See In re Knight Publ'g Co., 743 F.2d at 235 (explaining that "whether the public has already had access to the information contained in the records" constitutes one factor under common-law analysis); Kinetic Concepts, 2010 WL 1418312, at *10–11. (applying Rule 26(c) and noting that, if information subject to sealing motion remains readily available elsewhere, "any restriction on public access to that same information . . . would

---

[6]    The Clerk's Office audio-recorded the Hearing. (See Minute Entry dated July 30, 2021.)  In preparing this Memorandum Opinion, the undersigned used that recording to confirm exactly what transpired.  The description that follows above includes references to the topics of discussion in order to provide as full a picture as possible without delaying matters to obtain a transcript.

serve no purpose").[7]  Accordingly, the Court will deny the First Sealing Motion.

### B. Second Sealing Motion

The Second Sealing Motion covers an even wider range of documents than the First Sealing Motion, to include the sealed two-page Tandon Declaration, a sealed two-page email from counsel for Defendant to counsel for Plaintiff, and numerous redactions to the depositions of Defendant's current or former employees Bosse, Glass, Jewett, Lagarde, Negron, Otto, Sweeney, and Utiger (which span more than 250 pages), as well as redactions on nine pages of Defendant's 23-page Old Discovery Response. (See Docket Entry 49, ¶¶ 3, 5.)  However, consistent with the First Sealing Motion, Defendant has requested to seal some information that appears in public exhibits Defendant attached to the Old Discovery Response.

More specifically, unredacted portions of Jewett's deposition reveal some details about Otto's workplace complaint and how Defendant coded that matter in its internal database. (See Docket Entry 48-8 at 21 (Jewett testifying regarding accuracy of Defendant's response to Request for Admission No. 11).)  In similar

_____

[7]  The First Sealing Brief mentions but fails to meaningfully apply the common-law standard, focusing instead on cases interpreting the general constitutional right to privacy (see Docket Entry 42 at 8–9) and seeming to suggest, at one point, that unsealing may not occur absent demonstration "that the interest in disclosure outweighs the individual's privacy interest." (Id. at 9.)  To the contrary, both the common-law right of access and Rule 26(c) require that the party seeking to limit or prevent public disclosure prove the propriety of the same.  See Rushford, 846 F.2d at 253; Fed. R. Civ. P. 26(c); see also M.D.N.C. LR 5.4(a) (indicating that "sealing is disfavored" (standard capitalization applied)).

-15-

fashion, an unredacted part of Negron's deposition discloses the fact that New filed a charge with the EEOC. (See Docket Entry 48-11 at 54 (questioning Negron about letter from counsel for Defendant to EEOC).) Despite those disclosures, Defendant has redacted that material from the Old Discovery Response (likely because the same information appears in other documents that Defendant has proposed to seal or redact). (See Docket Entry 51 at 6, 19 (proposing to redact mention of Plaintiff's EEOC charge and details about how Defendant categorized Otto's complaint.)[8] Additionally, although Defendant has redacted from the Old Discovery Response the names of individuals that Plaintiff deposed in this action (see Docket Entry 51 at 7, 17), their surnames appear as public descriptors for sealed exhibits that Defendant filed (see Docket Entries 48-5, 48-6, 48-7, 48-8, 48-9, 48-10, 48-11, 48-13, 48-14, 48-15) and elsewhere on the public docket (see, e.g., Docket Entry 26-2 (Notice of Deposition of Marc Casper)).[9]

Furthermore, other instances of public disclosure occurred at the Hearing, insofar as the topics of discussion included the only substantive part of the Tandon Declaration and details regarding

---

[8] In connection with the latter proposed redaction, Defendant has cited one publicly available excerpt of Jewett's deposition. (See Docket Entry 51 at 19.)

[9] That inconsistent approach to redactions reaches other filings, as well. For example, Defendant has proposed to redact from the Old Discovery Response a reference to the parties' agreement to conduct Goodfellow's deposition outside the discovery period (see Docket Entry 51 at 7 n.6), with citation to the public filing seeking such relief and thereby disclosing that same information (Docket Entry 33).

-16-

Defendant's response to Plaintiff's and Otto's workplace complaints. (See Minute Entry dated July 30, 2021.) In particular, the parties revealed that Defendant's in-house counsel asked Goodfellow to investigate Plaintiff's and Otto's complaints[10] and addressed the extent to which those complaints involved similar (or different) alleged conduct. (See id.) The parties also discussed part of Otto's deposition, regarding whether Otto viewed her complaint as involving sex or gender discrimination. (See id.)

Finally, it bears emphasizing that "[s]ealed documents should not be filed unless necessary for determination of the matter before the Court." M.D.N.C. LR 5.4(a)(3). A review of the Old Discovery Response reveals citation to some largely immaterial but supposedly sensitive information. For example, Defendant has cited a 30-page excerpt of Negron's deposition to support the basic, uncontroverted proposition that the New Report exists. (See Docket Entry 51 at 6 (citing Docket Entry 48-11 at 22–54 and Exhibit 17 to Negron's deposition).) That same deposition excerpt includes irrelevant details about Negron's compensation and a medical issue. (See Docket Entry 51-9 at 10, 19.) Moreover, although Defendant has attached hundreds of pages of deposition testimony (perhaps to illustrate the adequacy of Plaintiff's opportunity to probe the pertinent issues (see Docket Entry 51 at 17–19)), the undersigned

_____

[10] Counsel for Plaintiff specifically referenced a footnote redacted from the Old Discovery Response in which Defendant has asserted that its in-house counsel oversaw Goodfellow's investigation of Otto's complaint because it "implicate[d] non-Title VII legal liability considerations" (Docket Entry 51 at 20 n.10). (See Minute Entry dated July 30, 2021.)

-17-

observed during the Hearing that Defendant had not pressed Rule 26 proportionality as a basis for denying the Old Discovery Motions. (See Minute Entry dated July 30, 2021.)

At bottom, the public disclosure described above (including as a result of apparent inadvertence and as necessary to resolve the Old Discovery Motions) undermines the notion that Defendant's privacy interests "heavily outweigh the public interests in access," Rushford, 846 F.2d at 253, or that good cause exists to justify the extensive sealing and/or redaction that Defendant has proposed. Although Defendant has identified two types of information that may warrant protection in judicial records or other filings (see Docket Entry 50 at 10–12), Defendant has not explained (i) how that general principle applies to the numerous proposed redactions or (ii) why the Old Discovery Motions necessitated the filing of hundreds of pages of supposedly sensitive documents.[11] The Court will thus deny the Second Sealing Motion and order the disclosure of information that appears

---

[11] As far as necessity, Defendant has contended that "[t]he evidence and matters at issue in this action necessarily require a discussion of, and reference to, confidential personal information, including personnel information, related to other current and/or former Thermo Fisher employees who are not parties to this action." (Docket Entry 50 at 1.) Although the Old Discovery Motions could have prompted an inquiry focused on relevance and/or proportionality, thereby broadening the scope of pertinent topics, Defendant primarily opposed the Old Discovery Motions by contending that (i) Plaintiff sought to obtain documents protected by attorney-client privilege and/or the work-product doctrine and (ii) Defendant had not waived such protections. (See Docket Entry 51 at 14–22.)

-18-

elsewhere on the public docket or that the parties revealed at the Hearing.

That conclusion will result in the unsealing of the Old Discovery Response (Docket Entry 51), the Tandon Declaration (Docket Entry 51-1), and excerpts from Otto's deposition (Docket Entry 51-11). However, because Defendant submitted documents not "necessary for determination of the [Old Discovery Motions]," M.D.N.C. LR 5.4(a)(3), and because the Court did not consider that extraneous material (see Text Order dated Sept. 3, 2021), the Court will grant Defendant's request (Docket Entry 49, ¶ 10 (citing M.D.N.C. LR 5.4(c)(7))) to withdraw the remainder of the exhibits that Defendant had asked to seal or redact (which includes the sealed email between counsel (Docket Entry 51-2), as well as redacted excerpts from the depositions of Bosse (Docket Entry 51-3), Glass (Docket Entry 51-5), Jewett (Docket Entries 51-6, 51-7), Lagarde (Docket Entry 51-8), Negron (Docket Entry 51-9), Sweeney (Docket Entry 51-12), and Utiger (Docket Entry 51-13)).

## C. Third Sealing Motion

The Third Sealing Motion relates to additional excerpts from the depositions of Otto and Jewett and an email between counsel in this action, all of which Plaintiff filed under seal, as well as redactions on seven pages of Plaintiff's ten-page Old Discovery Reply. (See Docket Entry 53, ¶¶ 4-5.) As with the First Sealing Motion and Second Sealing Motion, several publicly available exhibits contain some of the material that Plaintiff has moved to redact via the Third Sealing Motion. (See Docket Entry 35-19 at

-19-

1-2; Docket Entry 48-8 at 21.) Similarly, statements by counsel at the Hearing disclosed much of the information that Plaintiff has sought to maintain under seal. (See Minute Entry dated July 30, 2021 (relating fact of Otto's complaint, nature of Otto Investigation, and reason why counsel oversaw Otto Investigation).) For the reasons explained in the preceding two subsections, Defendant has demonstrated neither a sufficient countervailing interest nor good cause to shield the foregoing information from public view.[12] As a result, the Court will deny the Third Sealing Motion.

### D. Fourth Sealing Motion

By means of the Fourth Sealing Motion, Defendant has requested to seal the Ferri Declaration and excerpts from the depositions of McLawhorn and Ferri, as well as redactions appearing on eight pages of Defendant's 13-page Expert Discovery Response. (See Docket

---

[12] To the extent the Third Sealing Motion pertains to information not disclosed elsewhere in the public record, neither party has explained how such information qualifies as "necessary for determination of the [Old Discovery Motions]," M.D.N.C. LR 5.4(a)(3). (See Docket Entries 53, 65.) For example, Plaintiff filed (i) excerpts from Jewett's deposition to suggest Defendant's concealment of the Otto Investigation (see Docket Entry 54 at 5-6) and (ii) an email from counsel for Plaintiff to demonstrate her efforts to compromise with counsel for Defendant (see id. at 8). Neither showing advanced an argument bearing on the merits of the Old Discovery Motions. (See id. at 5-6, 8 (documenting Plaintiff's surprise to learn about Otto Investigation and Defendant's conduct preceding Old Discovery Motions without explaining import of those issues).) However, the Local Rules permit withdrawal of "documents for which sealing is sought . . . [w]hen the party filing a motion to seal is also the party claiming confidentiality," M.D.N.C. LR 5.4(c)(7). Because the Third Sealing Motion falls outside the scope of that provision, the Court will direct the Clerk to unseal (rather than strike) the materials at issue.

Entry 57, ¶¶ 3, 5.)  As grounds for that request, Defendant has contended that the materials at issue "[c]ontain[] confidential business and financial information related to the parties, [] Ferri's work, and[/or] third parties (e.g., [Plaintiff]'s employers following her employment with [Defendant])."  (Docket Entry 58 at 10.)  The Court discerns the following problems with the Fourth Sealing Motion and Fourth Sealing Brief.

First, Defendant has filed under seal more documents than acknowledged in the Fourth Sealing Brief.  In that regard, Defendant tendered the Ferri Declaration and the Ferri CV in a single sealed document together with the Ferri Report (see Docket Entry 61) but has mentioned neither the Ferri Declaration nor the Ferri CV in the Fourth Sealing Brief (see Docket Entry 58 at 4). Despite that omission, Defendant has redacted some citations to the Ferri Declaration from its Expert Discovery Response.  (See Docket Entry 59 at 7, 10–11.)  In light of Defendant's failure to address the reasons for sealing the Ferri Declaration and the Ferri CV, the Court will order Defendant to refile corrected versions of those documents on the public docket.

Second, Defendant has sought to seal some information that appears in a public exhibit attached to the Expert Discovery Response.  More specifically, an email thread between counsel for the parties reveals, inter alia, (i) Plaintiff's request for copies of protective orders from prior cases in which Ferri served as an expert on lost compensation (see Docket Entry 56-5 at 1), (ii) the nature of those prior cases, insofar as they "involv[ed] basic wage

-21-

earners whose income [wa]s tied exclusively or almost exclusively to wages and salary" (id. at 7), (iii) the fact that Ferri "use[d] a weighted average cost of capital discount rate in th[is case]" (id.), and (iv) the performance of Defendant's stock since Plaintiff's resignation (id.). Notwithstanding that disclosure, Defendant has redacted much of that same information from the Expert Discovery Response. (See Docket Entry 59 at 2, 4, 7, 10–11.)[13] That inconsistent approach undermines the justifications proffered in the Fourth Sealing Brief, regardless of whether Defendant must satisfy the common-law standard or demonstrate good cause under Rule 26(c).

Third, as with the Second Sealing Motion, Defendant submitted more sealed documents than "necessary for determination of the [Expert Discovery Motion]," M.D.N.C. LR 5.4(a)(3). For example, Defendant tendered the full 49-page Ferri Report (as well as more than 20 pages of tabular exhibits), despite citing in the Expert Discovery Response only five pages of the Ferri Report. (See Docket Entry 59 at 2, 3, 4, 7, 11 (citing Ferri Report at internal pages 15, 16, 17, 26, and 27).) Additionally, Defendant attached seven pages of McLawhorn's deposition as support for the proposition that "[Defendant]'s long-term incentive stock grants have appreciated significantly" (id. at 2), a fact that Defendant

_____

[13] In similar fashion, Defendant has proposed to seal some of that same information where it appears in exhibits accompanying the Expert Discovery Response. (See, e.g., Docket Entry 56-4 at 13 (Ferri declining to dispute then-current value of Defendant's stock).)

otherwise has corroborated with citations to publicly available historical data (see id. (citing Nasdaq.com)).

In connection with its resolution of the Expert Discovery Motion, the Court did not rely on (i) the portions of the Ferri Report that Defendant declined to cite or (ii) any part of McLawhorn's deposition. (See Text Order dated Sept. 13, 2021.) As a result, the Court will grant Defendant's request to withdraw those materials from the public docket (Docket Entry 57, ¶ 10 (citing M.D.N.C. LR 5.4(c)(7))). However, because the Court considered the excerpts from the Ferri Report and Ferri's deposition that Defendant cited in the Expert Discovery Response, Defendant may not, at this stage, withdraw those documents from the record. (See M.D.N.C. LR 5.4(c)(7) (providing withdrawal as option for "documents [that] will not be considered by the Court").) As concerns those documents, Defendant has failed to show a sufficient countervailing interest or good cause for sealing, especially because the Fourth Sealing Brief focuses on the sensitivity of "business and financial information" (Docket Entry 58 at 9), little of which appears in the cited excerpts from the Ferri Report and Ferri's deposition.[14] As a result, the Court will deny the Fourth Sealing Motion.

---

[14] To the extent Defendant has suggested that the inclusion of such information in Ferri's work constitutes a separate basis for sealing (see Docket Entry 58 at 10), Defendant has offered no argument in the Fourth Sealing Brief developing that theory (see id. at 5-9).

Case 1:19-cv-00807-TDS-LPA   Document 81   Filed 10/06/21   Page 23 of 25

## CONCLUSION

Because Plaintiff failed to file a brief as required in support of the Second Sealing Motion and Fourth Sealing Motion, the materials that Plaintiff deemed confidential do not warrant sealing or redaction. As for the remainder of the Sealing Motions, Defendant has demonstrated neither an interest outweighing the common-law right of access nor good cause under Rule 26(c), especially in light of the extent of disclosure elsewhere on the public docket. However, revealing any additional purportedly sensitive information remains appropriate only to the extent those materials impacted resolution of the Old Discovery Motions and Expert Discovery Motion. Given that the Court did not consider some of the documents that Defendant submitted and Defendant sought permission to withdraw such documents, striking (rather than unsealing) constitutes the appropriate course as to those documents.

**IT IS THEREFORE ORDERED** that the First Sealing Motion (Docket Entry 36) is **DENIED,** such that the Clerk shall unseal Docket Entry 38 (and attached exhibits).

**IT IS FURTHER ORDERED** that the Second Sealing Motion (Docket Entry 49) is **DENIED,** such that the Clerk shall unseal Docket Entries 51, 51-1, 51-4, 51-10, and 51-11, and strike Docket Entries 51-2, 51-3, 51-5, 51-6, 51-7, 51-8, 51-9, 51-12, 51-13.

**IT IS FURTHER ORDERED** that the Third Sealing Motion (Docket Entry 53) is **DENIED,** such that the Clerk shall unseal Docket Entry 54 (and attached exhibits).

-24-

**IT IS FURTHER ORDERED** that the Fourth Sealing Motion (Docket Entry 57) is **DENIED,** such that the Clerk shall unseal Docket Entries 59, 59-3, and 59-4 and strike Docket Entries 59-1 and 59-2.

**IT IS FURTHER ORDERED** that Defendant shall refile corrected versions of the Ferri Declaration (Docket Entry 61 at 1-4) and the Ferri CV (<u>id.</u> at 104-15) on the public docket, as well as excerpts from the Ferri Report in a form consistent with this Order's conclusions.

_/s/ L. Patrick Auld_
**L. Patrick Auld**
**United States Magistrate Judge**

October 6, 2021